**UNITED STATES of America,**

v.

**Charod BECTON, Defendant.**

**No. S9 02 CR 451(RO).**

United States District Court, S.D. New York.

Oct. 18, 2006.

Avraham C. Moskowitz, Moskowitz & Book, LLP, New York City and Jeremy Schneider, Rothman, Schneider, Soloway & Stern, New York City, for defendant Charod Becton.

*MEMORANDUM AND ORDER*

OWEN, District Judge.

In this alleged triple homicide-death penalty case on its way to trial very shortly, in response to the letter of counsel for the above defendant dated August 22, 2006, which seeks reconsideration of an order of this Court dated August 3, 2006, the application is dealt with as follows.

As to the demand that the Social Security Administration furnish to defendant their "entire" social security file on Jasper Becton, father of defendant Becton, and that the Department of Veterans' Affairs as to father Becton similarly furnish their

"entire" file, the reason for these demands were and are based upon the statement of Becton's counsel that:

" . . . [w]itnesses have told us that *following the death of Jasper Becton,* Charrod's mother, Michelle Boyer, received either veterans benefits or social security payments that were supposed to be for Charrod's benefit. Those witnesses have also told us that Michelle, who was a crack addict and *had* abandoned Charrod to be raised by her mother, Lucille, did not use the money to defray the costs of raising Charrod, but instead, used the money to support her drug habit." (Emphasis supplied.)

 But these broad demands of production from government agencies are of no support as to what defendant wants to demonstrate. What counsel wants to show—at the penalty phase should there be one—is that whatever monies the defendant's mother received on account of her husband from the government, she did not use for Charod as a child. For this and her subsequent conduct these agencies' records provide no support at all. I note that such support obviously already exists from the witnesses that have been interviewed by defendant's counsel and presumably will testify to what counsel represents they will say. Also, obviously, the mother is a direct witness on these issues and is available.[1] Further, I note that counsel's statement to the Court above indicates that the defendant was *already* "abandoned" by his mother and was being raised by his grandmother, Lucille. The extensive records demanded from the government agencies is denied since their collection would be time-consuming and of no support for defendant's

contention of the mother's misuse of whatever funds she did receive. Nevertheless, as a matter of the Court's discretion, the agencies are directed to provide defendant with a schedule setting forth what funds were sent to mother Michelle Boyer for Charod's benefit and when. Defendant is to submit a formal order for me to sign.

The demand for a supplemental subpoena to Bronx Supreme Court for records which defendant listed as elsewhere in an earlier subpoena it had the Court sign is granted. The newly-submitted subpoena is signed and may be picked up.

As to the renewed request in defendant's said August 22 letter to hire a videographer, I note that I already earlier suggested in my Opinion and Order of August 3, 2006, that *if* defendant's counsel would permit the prosecution to engage in "appropriate, sensitively-conducted, cross-examination of the children on whatever defendant would seek to elicit[,]" it would be granted. Defendant completely disregarded that offer before and now,[2] states in a rather obdurate way in its recent letter at page 6, that coming to Court would traumatize the children which could do them "life long . . . injury."

Defense counsel also state in that letter:

["If] the Court persists in its refusal to authorize the retention of a videographer and abides by its prior ruling requiring that the Becton children be brought to Court to testify,[3] the jury will be denied the opportunity to hear from those children about their deep emotional attachment to their father and about the positive influence he played, and continues to play, in their lives [ . . . ."]

---

1. Whether this is something where she would want to confirm other witnesses' statements may be another matter.

2. This offer was restated in a sealed conference on September 14 at p. 6 which the defense did not follow-up on.

3. [by the Court] Neither of which did I do.

But, I would call to the defendant's attention the completely supporting view of this Court's position here by another Court addressing the identical problem, however, in a slightly different context. *U.S. v. Ortiz*, 315 F.3d 873, 904 (8th Cir.2002) where the Court stated:

> Before defense counsel presented the videotape testimony [of his family members], the Court instructed the jury that the defendant had attempted to secure the presence of the videotaped witnesses but could not do so, that the government had not been given the tapes until April 28[th] (the tapes were introduced on May 1[st]), and that the jury could consider the government's inability to cross-examine the witnesses in deciding what weight, if any, to give to the videotaped interviews. Tr. 2713. This instruction was permissible. *"The government was entitled to cross-examine defendant's witnesses, and its inability to do so with videotape testimony is a factor going to the evidence's reliability."* (Emphasis supplied).

■ Here, the children/witnesses are available and the Government is entitled to the "ability" to cross-examine. I reassert that videotaping is still authorized, conditioned on the Government's right to be present at this time and cross-examine.

The foregoing is so ordered.